UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| THE BANK OF NEW YORK MELLON, as Trustee,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>HILLCREST AT SUMMIT HILLS HOMEOWNERS ASSOCIATION, *et al.*,<br><br>　　　　　　　　　　Defendants. | Case No. 2:16-cv-01303-KJD-NJK<br><br>**<u>ORDER</u>** |

Before the Court are three motions for summary judgment. The first was filed by defendants and counterclaimants, the Edward Kielty Trust, Abigail Sarceno Avila, Maria Aguirre, Ever Atilio Lozano-Membreno, Zoila Angelica Membreno, and Edward and Mary Kielty[1] (ECF No. 96). Plaintiff, the Bank of New York Mellon, responded (ECF No. 106), and the Trust defendants replied (ECF No. 110).

Next, the Bank of New York Mellon moved for summary judgment (ECF No. 97). Both the Edward Kielty Trust defendants and co-defendant Hillcrest at Summit Hills Homeowners Association responded (ECF Nos. 103, 104). BNY Mellon replied (ECF No. 114).

Finally, Hillcrest at Summit Hills Homeowner Association moved for summary judgment (ECF No. 98). BNY Mellon responded (ECF No. 105), and Hillcrest replied (ECF No. 115).

Both BNY Mellon and the Edward Kielty Trust claim an interest in a home located at 2216 Calm Sea Avenue in Las Vegas, Nevada. BNY Mellon claims that it holds the superior interest in the property by virtue of a lender's deed of trust. The Trust argues that it purchased the property free and clear of the bank's interest after a lawful nonjudicial foreclosure

---

[1] For ease of reference, the Court will refer to the defendants collectively as "the Edward Kielty Trust" or "the Trust" unless otherwise necessary.

extinguished the lender's deed of trust. Hillcrest, on the other hand, does not claim an interest in the property. Rather, Hillcrest seeks vindication that its foreclosure was lawful and that it did not deceive BNY Mellon during the foreclosure process.

BNY Mellon contends that Hillcrest's foreclosure did not extinguish its property interest because the bank's predecessor-in-interest tendered the superpriority lien balance before foreclosure. Hillcrest rejected that payment. Although proper foreclosure of a superpriority lien extinguishes even a lender's first deed of trust, tender of the outstanding superpriority lien before the foreclosure preserves that interest. That is what happened here. BNY Mellon tendered the entire superpriority balance before foreclosure. Hillcrest's agent, Nevada Association Services, rejected that payment and foreclosed anyway. Because BNY Mellon cured Hillcrest's superpriority lien, the association could only foreclose on the subpriority piece of its lien, which it then conveyed to the Edward Kielty Trust. As a result, the Trust took the property subject to BNY Mellon's valid deed of trust. Accordingly, the Court grants BNY Mellon's motion for summary judgment against the Edward Kielty Trust, denies the Trust's countermotion for summary judgment and denies as moot the bank's remaining claims against Hillcrest.

**I.      Background**

The facts in this case follow a familiar pattern of nonjudicial foreclosures. In 2001, nonparty Denise Hookfin purchased the home at 2216 Calm Sea Avenue for $111,000. See Deed of Sale, ECF No. 96-B. Six years later, Hookfin refinanced the property. The refinance deed of trust listed Hookfin as borrower, Mortgage Solutions Management, Inc. as lender, and Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary under the deed of trust. See Deed of Trust 1–2, ECF No. 96-C. MERS later assigned its interest to plaintiff BNY Mellon, who brought this suit. Corp. Assignment of DOT, ECF No. 96-D.

From the time of sale to present, the property has been part of the Hillcrest at Summit Hills Homeowner Association and is subject to the association's Covenants, Conditions, and Restrictions ("CC&Rs"). See Hillcrest CC&Rs, ECF No. 96-A. Among those conditions was the owner's responsibility to pay monthly assessments for general upkeep and shared community maintenance. Id. at 15. At some point, Hookfin fell behind on her assessments. That prompted

Hillcrest to begin collection actions against Hookfin. In October of 2011, Hillcrest's agent, Taylor Association Management, recorded a Notice of Delinquent Assessment Lien against the property. See Assessment Lien, ECF No. 96-E. The lien identified Hookfin's total outstanding balance as $890.00. Id. Of the total balance, $445.00 was "assessments, interest costs and penalties in arrears," and the other $445.00 constituted "collection and lien costs." Id.

When Hookfin did not pay the outstanding balance, Hillcrest began foreclosure proceedings against the property. In April of 2012, Hillcrest's new agent, Nevada Association Services, recorded a Notice of Default and Election to Sell. See Notice of Default, ECF No. 96-F. In the six months between Hillcrest's delinquent assessment lien and its notice of default, Hookfin's outstanding balance ballooned to $2,478.60. Id. Failure to satisfy that balance, the notice stated, could cause Hookfin to lose her home. Id. In addition to recording the notice, Nevada Association Services sent the notice certified mail to Hookfin, MERS, and BNY Mellon. See Certified Mail Log, ECF No. 98-C. Neither Hookfin, nor any other interested party, paid the $2,478.60 balance, which caused Hillcrest to record a Notice of Foreclosure Sale. ECF No. 96-G. That notice scheduled the foreclosure sale for February 1, 2013, though the actual sale did not occur until May of 2013. See Foreclosure Deed, ECF No. 96-J. The notice also warned that all rights and interests in the property would be sold to the highest bidder unless Hookfin satisfied the outstanding assessment balance of $4,595.27. Id. at 3.

Around that time, BNY Mellon's predecessor in interest, Bank of America, retained the law firm of Miles, Bauer, Bergstrom & Winters ("Miles Bauer") to ascertain and satisfy the bank's portion of the outstanding lien balance. On February 11, 2013, attorney Rock K. Jung contacted Nevada Association Services by letter and requested an accounting of the outstanding lien balance. The letter acknowledged that the superpriority portion of the association's outstanding lien was "arguably senior" to the bank's interest. Id. at 7. However, the bank argued that the superpriority balance only equaled to nine-months' worth of community assessments. With that understanding, Miles Bauer requested an account ledger detailing nine-months of common assessments on the property and agreed to pay that amount "whatever it [was]." Id. Nevada Association Services did not produce the nine-month ledger, leaving Bank of America to

calculate the outstanding superpriority balance on its own. The bank did so by referencing a statement of account from a different property in the Hillcrest Association. Borrowing from that ledger, Bank of America calculated the superpriority lien to be $630.00 ($70 per month for nine months). Stmt. of Acct., ECF No. 97-F Ex. 3. It then sent Nevada Association Services a check for that amount. A letter accompanying that check read:

> Despite your current refusal to provide HOA payoff ledgers, [Bank of America] still wishes to make a good-faith attempt to fulfill [its] obligations as the 1st lienholder by tendering to NAS an accurate estimate of the Super-Priority Amount. . . Enclosed you will find a cashier's check made out to NEVADA ASSOCIATION SERVICES in the sum of $630.00.
>
> This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance . . . and express agreement that [the bank's] Super-Priority obligations towards the HOA . . . have now been "paid in full."

Id. at 13. Hillcrest was undeterred by the bank's offer to pay nine-months' worth of assessments. It returned the check and proceeded to foreclosure. On May 3, 2013, Nevada Association Services sold the property a trustee's sale to the Edward Kielty Trust for $6,000. Foreclosure Deed, ECF No. 96-J.

After the trustee's sale, the Trust assigned portions of its interest in the property to various individual defendants in a series of quitclaim transactions. First, the Trust transferred 1% of its interest to Abigail Sarceno Avila and Maria E. Aguirre. See Avila Quitclaim Deed 1, ECF No. 97-J. That same day, Avila and Aguirre returned their 1% interest to the Trust by quitclaim deed. Avila Quitclaim Deed 2, ECF No. 97-K. Later the Trust transferred 1% of its interest in the property to Ever Atilio Lozano-Membreno and Zoila Angelica Membreno. Membreno Quitclaim Deed, ECF No. 97-L.

BNY Mellon brought this suit in June of 2016. The bank included as defendants Nevada Association Services, Hillcrest Homeowners Association, The Edward Kielty Trust, and the four individuals to whom the Trust quitclaimed its interest (Avila, Aguirre, Ever Lozano-Membreno,

and Zoila Membreno). Compl. 1, ECF No. 1. The complaint listed five causes of action: (1) Quiet Title/Declaratory Relief against each defendant; (2) Breach of NRS § 116.1113 against Hillcrest and Nevada Association Services; (3) Wrongful Foreclosure against Hillcrest and Nevada Association Services; (4) injunctive relief [2] against the Trust defendants; and (5) Deceptive Trade Practices against Hillcrest and Nevada Association Services. Am. Compl. at 6–13. The Trust defendants answered BNY Mellon's complaint and asserted their own quiet title claim against the bank. Answer & Counterclaim, ECF No. 24.

BNY Mellon later amended its complaint to add Hillcrest at Summit Hills Homeowners Association. Am. Compl., ECF No. 39. The Court dismissed Hillcrest Homeowners Association in favor of Hillcrest at Summit Hills Homeowners Association. See Order, ECF No. 90. In early 2018, the Court stayed the case pending the determination of NRS § 166.1113's notice requirements. See Order Staying Case 2, ECF No. 80. The Court lifted the stay in May of 2019, and the parties renewed their motions for summary judgment shortly thereafter. Since then, Nevada Association Services stipulated to a default judgment, which the Court entered on December 6, 2019. Def. J., ECF No. 109. That leaves BNY Mellon's claims against the Trust defendants and Hillcrest and the Trust defendant's counterclaim against BNY Mellon.

## II.    Legal Standard

The purpose of summary judgment is to avoid unnecessary trials by disposing of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986); Nw. Motorcycle Ass'n v. U.S. Dept. of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994). It is available only where the absence of material fact allows the Court to rule as a matter of law. Fed. R. Civ. P. 56(a); Celotex, 477 U.S. at 322. Rule 56 outlines a burden shifting approach to summary judgment. First, the moving party must demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to produce specific evidence of a genuine factual dispute for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine issue of fact exists where the evidence could allow "a reasonable jury [to]

---

[2] Injunctive relief, however, is a remedy and not a stand-alone cause of action. See In re Wal-Mart Wage and Hour Emp't Practices Litig., 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007).

return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court views the evidence and draws all available inferences in the light most favorable to the nonmoving party. Kaiser Cement Corp. v. Fischbach & Moore, Inc., 793 F.2d 1100, 1103 (9th Cir. 1986). Yet, to survive summary judgment, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

Where parties have filed competing motions for summary judgment, the Court must review each motion on its own merits. Fair Housing Council of Riverside Cty., Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001). In reviewing each motion, the Court views the evidence and makes all available inference in favor non-moving party. See Kaiser Cement Corp., 793 F.2d at 1103. At bottom, a party does not prevail on summary judgment solely because the other party did not prevail. See Riverside Two, 249 F.3d at 1136.

### III. Analysis

Although there are three pending motions, they boil down to two main issues: (1) whether BNY Mellon or the Edward Kielty Trust holds the superior interest in the property and (2) whether Hillcrest wrongfully foreclosed on its delinquent assessment lien. If BNY Mellon insulated its deed of trust from Hillcrest's foreclosure, its claims against the association are moot because the foreclosure did not cause the bank an injury. The Court evaluates both issues below, starting with parties' competing quiet title claims.

#### A. BNY Mellon and the Edward Kielty Trust's Competing Motions for Summary Judgment

BNY Mellon argues that its predecessor-in-interest protected the bank's deed of trust by tendering the superpriority portion of Hillcrest's assessment lien before the association foreclosed on the property. Alternatively, the bank claims that Hillcrest's foreclosure is invalid because NRS § 116 was unconstitutional or because the trustee's sale was inequitable. The Trust counters that BNY Mellon's claims are time-barred under a three-year statute of limitations. If the claims are timely, the Trust argues that Hillcrest's foreclosure complied with NRS § 116, was constitutional, and that the association rightfully rejected the bank's conditional tender.

As an initial matter, BNY Mellon's claims are timely. The parties disagree on the appropriate statute of limitations for this type of so-called quiet title action. The Trust claims that

BNY Mellon's claims arise out of various provisions of NRS § 116, which would impose a three-year statute of limitations. See D's Mot. Summ. J. 9, ECF No. 96 (citing NRS § 11.190, which imposes a three-year limitations period on any "action upon a liability create by statute"). BNY Mellon, on the other hand, claims that this type of quiet title action is not subject to any statute of limitations "so long as enforcement of the deed of trust is not time-barred." P.'s Resp. 5, ECF No. 106.

Courts in this district are split between a four-year and five-year statute of limitations for this type of quiet title claim.[3] The disagreement boils down to whether these claims are "founded upon the title to real property" under NRS § 11.070 or an attempt to recover property under NRS § 11.080. If so, §§ 11.070 and 11.080 impose a five-year limitations period. If §§ 11.070 & 11.080 do not apply, the Court is left with NRS § 11.220's four-year catch-all period for actions not covered by the other limitations provisions. This Court has previously determined that a five-year statute of limitations applies and sees no reason to depart from that holding. See Bank of New York Mellon v. Green Valley S. Owners Ass'n, No. 2:17-cv-2024-KJD-EJY, 2019 WL 4393356 at *4 (Sept. 13, 2019).

Regardless, BNY Mellon's claim would be timely under any statute of limitations longer than three years. The clock on BNY Mellon's claim began accrual at the time the bank knew or reasonably should have known it suffered an injury. See G & H Assocs. v. Ernest W. Hahn, Inc., 934 P.2d 229, 233 (Nev. 1997). Here, the soonest the bank could have suffered injury was May 3, 2013, when Hillcrest attempted to foreclose on its deed of trust. The bank filed its complaint on June 10, 2016, just outside the Trust's suggested three-year period. Compl. at 1. Under either a four-year or five-year limitations period, BNY Mellon's claim is timely. Therefore, the bank's

---

[3] Compare Bank of New York Mellon v. Khosh, No. 2:17-cv-0957-MMD-PAL, 2019 WL 2305146 (D. Nev. May 30, 2019) (applying five-year statute of limitations to quiet title claim under NRS § 11.070); Newlands Asset Holding Tr. v. SFR Invs. Pool 1, LLC, No 3:17-cv-0370-LRH-WGC, 2017 WL 5559956 (D. Nev. Nov. 17, 2017) (same); Nationstar Mortg., LLC v. Falls at Hidden Canyon Homeowners Ass'n, No. 2:15-cv-1287-RCJ-NJK (D. Nev. June 14, 2017) (same); HSBC Bank USA, N.A. v. Green Valley Pecos Homeowners Ass'n, Inc., No. 2:16-cv-0242-JCM-GWF, 2017 WL 937723 (D. Nev. Mar. 9, 2017) (same), with U.S. Bank v. SFR Invs. Pool 1, LLC, ---F.Supp.3d ---, 2019 WL 1383265 (D. Nev. Mar. 27, 2019) (applying four-year catchall provision under NRS § 11.220); Nationstar Mortg., LLC v. Safari Homeowners Ass'n, No. 2:16-cv-0542-RFB-CWH, 2019 WL 121960 (D. Nev. Jan. 6, 2019) (same); Bank of America, N.A. v. Country Garden Owners Ass'n, No. 2:17-cv-1850-APG-CWH, 2018 WL 1336721 (D. Nev. Mar. 14, 2018).

claim may proceed as timely.

Having found BNY Mellon's quiet title claim timely, the Court next addresses the question of tender. If BNY Mellon's predecessor validly tendered the superpriority balance to Hillcrest before foreclosure, the bank's deed of trust would survive Hillcrest's trustee's sale. As a result, Hillcrest's ability to foreclose would be limited to the subpriority lien, and the Trust would not have acquired BNY Mellon's interest. For its part, the Trust argues that the bank's offer of tender did not protect the BNY Mellon's interest because it was merely a conditional offer to pay the superpriority balance. Alternatively, the Trust argues, the purported tender is invalid because the bank failed to "record, release, or otherwise notice any party" that it attempted to pay the superpriority amount. D.'s Resp. at 9.

It is now settled law in Nevada that a homeowner association's valid foreclosure of a superpriority lien extinguishes all prior encumbrances, including a lender's deed of trust. SFR Invs. Pool 1, LLC v. U.S. Bank, N.A., 334 P.3d 408, 419 (Nev. 2014). However, the Nevada Supreme Court has confirmed that a lender's valid tender before foreclosure cures the association's superpriority lien and voids the foreclosure as to the tendering party's deed of trust. Bank of America, N.A. v. SFR Invs. Pool 1, LLC, 427 P.3d 113, 121 (Nev. 2018) ("Diamond Spur"). Tender is valid when it is an "in-full" and unconditional payment of the superpriority lien. If the tendering party includes conditions on its tender, it must have the right to request those conditions. Id. at 117–118.[4]

Diamond Spur presented facts nearly identical to these. There, Bank of America retained Miles Bauer to calculate nine months of assessments. Miles Bauer tendered a check for that amount to the association's agent before foreclosure. The letter accompanying the check included conditions, including a "paid-in-full" condition, whereby the association's acceptance of tender would satisfy all of the bank's financial obligations to the association. Id. at 118. Like

---

[4] In a subsequent decision, the Nevada Supreme Court determined that a lender's deed of trust may survive absent tender if it was clear that tender would have been futile. See Bank of America, N.A. v. Thomas Jessup, LLC Series VII, 435 P.3d 1217, 1220 (Nev. 2019), reh'g en banc granted, Order Granting en Banc Reconsideration, No. 73785 (Sept. 24, 2019). The Nevada Supreme Court has since called for en banc reconsideration of Jessup (id.), and a decision is pending. In the interim, the Court will not rely on Thomas Jessup. Nor should it. Diamond Spur made clear that BNY Mellon's tender of the superpriority portion of the lien was enough to protect its deed of trust against foreclosure.

here, the association rejected the check and elected to foreclose. The association then argued that the bank's tender was invalid because it did not include payment for nuisance and abatement fees and that the tender was impermissibly conditional due to the paid-in-full language in the tender letter. Id. at 117–18.

The Nevada Supreme Court disagreed. It found that the bank's tender was both "in-full" and not impermissibly conditional. Payment in full, according to NRS § 116.3115, only includes nine months of unpaid assessments and any nuisance or abatement fees, if those fees exist. Id. at 117. Because there was no evidence that Bank of America owed nuisance and abatement fees, its liability to the association was limited to nine months' unpaid assessments. Id. Therefore, nine-months' worth of assessments constituted payment in full. Likewise, the tender was not impermissibly conditional because Bank of America had a right to insist upon the conditions it included in its tender. By tendering payment prior to the foreclosure, the bank voided the association's foreclosure of the superpriority lien. The association, therefore, could not convey the property free from Bank of America's deed of trust, and any subsequent purchaser took its interest subject to the bank's. Id. at 121.

The facts here are nearly identical to Diamond Spur. BNY Mellon's predecessor-in-interest retained Miles Bauer who calculated the superpriority lien amount. Miles Bauer sent a check to cure Hillcrest's superpriority lien, yet Hillcrest rejected the payment and foreclosed anyway. There is no evidence that BNY Mellon owed nuisance and abatement fees that would render its nine-month payment insufficient. Put simply, the bank's debt to Hillcrest did not extend past nine months of delinquent assessments. Nevertheless, the Trust argues that the bank should have paid the entire delinquent balance and then sued to recover the overpayment. D.'s Resp. at 9 ("the most prudent solution for [BNY Mellon] would have been to pay the entire figure, save the property from foreclosure . . . and thereafter, dispute the amount paid"). While that may have been good policy—and may have saved thousands of dollars in litigation and fees—the bank was under no obligation to overpay and seek a refund. Its only obligation was to pay the balance of the superpriority lien to preserve its interest.

Further, the conditions that Miles Bauer included in its tender did not make its tender

impermissibly conditional because the bank was allowed to insist upon those conditions. The only acceptable conditions in a valid tender are "receipt of full payment or a surrender of the obligation." Id. at 118 citing Heath v. L.E. Schwartz & Sons, Inc., 416 S.E.2d 113, 114–15 (Ga. App. 1992). Here, the only condition Miles Bauer included in its tender was that acceptance would result in the bank's financial obligations to the association being "paid in full." Tender Letter 2, ECF No. 46 Ex. 9-4. That condition falls within the "receipt of full payment" condition that the bank was allowed to insist upon. See Diamond Spur, 427 P.3d at 118.

Miles Bauer, likewise, was under no obligation to record the bank's tender or otherwise "keep it good." The Trust argues that even if the tender was valid when the association rejected it, that tender lapsed when the bank failed to record it or when the bank failed to notify other parties of its intent to cure the lien. D.'s Resp. 9, ECF No. 104. Again, Diamond Spur is instructive. The plain text of NRS 111.315's recording requirements do not apply to Miles Bauer's tender because tender of the superpriority portion of an association's lien does not "create, alienate, assign, or surrender an interest in land." Diamond Spur, 427 P.3d at 119. Therefore, the bank's tender remained "good" despite the bank's failure to record it.

At bottom, Diamond Spur's near identical tender was good enough to preserve the lender's deed of trust there, and it is good enough to preserve BNY Mellon's deed of trust here. There is no genuine issue of material fact that BNY Mellon's predecessor-in-interest tendered Hillcrest's superpriority lien before the association foreclosed. In so doing, the bank cured Hillcrest's superpriority lien and voided the foreclosure of its deed of trust, which still encumbers the property. Because the issue of tender is dispositive to BNY Mellon's motion, the Court need not reach its alternative arguments that NRS § 116.3116 was unconstitutional or that Hillcrest's trustee's sale was inequitable. Accordingly, the Court grants summary judgment in favor of BNY Mellon on its quiet title and declaratory relief claim and denies the Edward Kielty Trust's countermotion for summary judgment on its quiet title counterclaim.

**B. Hillcrest at Summit Hills Homeowners Association's Motion for Summary Judgment**

Having granted summary judgment in favor of BNY Mellon, the Court moves on to the bank's three additional claims against Hillcrest: Breach of NRS § 116, Wrongful Foreclosure,

and Deceptive Trade Practices. It appears that BNY Mellon pleaded these causes of action against the association in the alternative to its quiet title claim. See P.'s Resp. 9, ECF No. 105 (the bank's alternative claims are only relevant "[i]f the court concludes, despite the tender, the sale extinguished the deed of trust"). Because BNY Mellon prevailed on its quiet title and declaratory relief claim, its alternative claims are now moot. Further, because BNY Mellon's deed of trust survived Hillcrest's foreclosure, the association did not breach NRS § 116, deceive the bank, or wrongfully foreclose the bank's interest. Accordingly, BNY Mellon has not suffered damages as a result of Hillcrest's foreclosure. Therefore, the Court dismisses as moot BNY Mellon's claims for Breach of NRS § 116, Wrongful Foreclosure, and Deceptive Trade Practices against Hillcrest at Summit Hills Homeowner Association.

**IV.     Conclusion**

Accordingly, IT IS HEREBY ORDERED that plaintiff BNY Mellon's partial Motion for Summary Judgment (ECF No. 97) is **GRANTED**. The Court declares that BNY Mellon's deed of trust in the property located at 2216 Calm Sea Avenue in Las Vegas, Nevada survived Hillcrest at Summit Hills Homeowner Association's nonjudicial foreclosure. Any interest that the Edward Kielty Trust took in this property it took subject to BNY Mellon's valid deed of trust. It follows that any percentage of the interest that the Trust conveyed to the individual defendants in this case, is junior to BNY Mellon's interest in the property.

IT IS FURTHER ORDERED that defendants/counterclaimants the Edward Kielty Trust, Abigail Sarceno Avila, Maria Aguirre, Ever Atilio Lozano-Membreno, Zoila Angelica Membreno, and Edward and Mary Kielty's Motion for Summary Judgment (ECF No. 96) is **DENIED**;

IT IS FURTHER ORDERED that BNY Mellon's remaining claims against defendant Hillcrest at Summit Hills Homeowner Association are **DENIED AS MOOT**.

///

///

///

///

Having resolved each of the claims and counterclaims, the Court directs the Clerk of Court to **ENTER JUDGMENT** in favor of BNY Mellon on its quiet title and declaratory relief claim and close this case.

Dated this 13th day of January, 2020.

_____
Kent J. Dawson
United States District Judge